UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | NUMBER |
| **LELAND KEITH** <br> **MARY SUE KEITH** | **02-10655** |
| DEBTORS | CHAPTER 13 |
| **LELAND KEITH AND** <br> **MARY SUE KEITH** | ADV. NUMBER <br> **02-1028** |
| PLAINTIFFS | |
| V. | |
| **BARRY J. LANDRY, TED B. BLANCHARD** <br> **AND J. KEVIN KIMBALL** | |
| DEFENDANTS | |

## MEMORANDUM OPINION

Defendant Ted Blanchard has moved for partial summary judgment requesting dismissal of certain claims plaintiffs Leland and Sue Keith made in their Supplemental and Amended Petition ("Amended Petition"). The plaintiffs filed the Amended Petition[1] in state court on February 5, 2002, and removed the lawsuit to this Court on March 25, 2002.

The Court will grant the motion in part and deny it in part for reasons set forth in this opinion.

---

[1] The original petition filed January 16, 2002 named only Barry Landry as a defendant. The Court dismissed all claims against Landry on his motion for summary judgment on April 11, 2003.

## I. Factual Background[2]

The Keiths and Blanchard are no strangers to each other. The Keiths were Blanchard's tenants in 1997 when they first began borrowing money from him on a fairly regular basis. According to Sue Keith's deposition testimony, when Blanchard loaned them money in 1997, he told them that, because he had to borrow the money he loaned to them from someone else, they would have pay him interest on loans that could total as much as "two for one." In other words, they would have to repay Blanchard double the amount they borrowed from him. Mrs. Keith's deposition also reveals that this was the case with a number of other loans they made from Blanchard after 1997. However, no party offered any evidence concerning the specific terms and amounts of these early loans.

Lawyer Barry Landry began representing the Keiths in 1997. His representation eventually came to include lawsuits for claims associated with four different casualties. Sue Keith received $100,000 in partial settlement of the first lawsuit in October 1998. She testified in her deposition that she instructed Landry to pay Blanchard $4,680 of that on outstanding loans. At the time, Blanchard acknowledged that the Keiths had fully repaid their outstanding debt.

An additional settlement of claims in the first lawsuit yielded $175,000 on February 18, 1999. From the settlement funds, Blanchard was paid $37,500 for "land" comprising two pieces of immovable property the Keiths bought from him. Blanchard also was paid $6,225 on a "loan," the

---

[2] The facts are taken from Landry's Statement of Uncontested Material Facts and exhibits submitted in support of his Motion for Summary Judgment, which Blanchard adopted. The Keiths did not submit a statement of contested material facts in opposition to Landry's motion as required by Local Bankruptcy Rule 7056-1(b). Accordingly, the material facts set out by Landry (and adopted by Blanchard) are deemed admitted for purposes of this motion.

terms of which were not placed in evidence by any party.

The loans continued. Only two months later, in April 1999, the Keiths granted Blanchard a mortgage on the two lots to secure another loan he'd made to them.[3] Only two months after that transaction, on June 12, 1999 the Keiths bought a car from Blanchard. They agreed to pay him $7,500 for the car from funds they anticipated receiving through the settlement of one of their lawsuits.

By August 1999, Mr. and Mrs. Keith acknowledged owing Blanchard a total $59,000 for the car, the real estate and other unspecified "loans." The Keiths agreed to pay Blanchard from the settlement of a maritime lawsuit filed on behalf of Leland Keith. By June 5, 2000, their debt to Blanchard had increased to $62,900.[4] The Keiths also acknowledged this debt in writing.

Leland Keith's maritime lawsuit was settled in February 2001 for $212,500. On February 5, 2001, Blanchard received $64,000 from these settlement proceeds. Leland Keith explained in his deposition that the $1,100 difference between the amount the Keiths acknowledged as due on June 5, 2000 and the amount paid to Blanchard was "extra" Mr. Keith paid to Blanchard for "doing these loans." (Transcript of deposition of Leland Keith held November 26, 2002, pp. 50-52.) Blanchard gave the Keiths a receipt dated February 5, 2001 acknowledging receipt of $64,000 as payment in full for all indebtedness, including interest.

## II. Discussion

The Keiths' petition and Amended Petition allege that Blanchard and Barry Landry participated

---

[3] Blanchard loaned the Keiths $40,000, according to the April 1999 note and mortgage. However, the Keiths insist that they borrowed only $20,000 at that time, a fact Blanchard disputes.

[4] The reason for the $3900 increase in the balance since August 1999 is not evident from the record.

in a concerted course of conduct over a period of at least four years that monetarily benefitted Blanchard and Landry, but economically and emotionally injured the Keiths. The Keiths urge claims against Blanchard under the Louisiana Unfair Trade Practices and Consumer Protection Law (La. R.S. 51:1401 *et seq*.), the Louisiana Consumer Credit Law (La. R.S. 9:3510 *et seq*.), and Louisiana Civil Code provisions dealing with fraud, usury and illicit contracts.[5] Blanchard does not seek summary judgment on the merits of the Keiths' claims, but rather on the ground that most of the Keiths' claims against him are either prescribed or perempted.[6] To prevail, Blanchard must show that there are no genuine issues of material fact and that, as a matter of law, the claims are prescribed or perempted. Fed. R. Civ. P. 56(c) (adopted by Fed. R. Bankr. P. 7056(c)).

### (A)  Louisiana Unfair Trade Practices and Consumer Protection Law

The Louisiana Unfair Trade Practices and Consumer Protection Law (LUTPA) provides a private cause of action for consumers who suffer a monetary or other property loss as a result of the unfair or deceptive acts of another in trade or commerce. La. R.S. 51:1405(A), 1409(A). Pursuant to section 1409(E), the action provided for in section 1409(A) "shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action." Louisiana courts interpret this time period as peremptive, not prescriptive, so that it is not subject to suspension, interruption or

---

[5] The petition and Amended Petition are not artfully drafted, but Fed. R. Civ. P. 8 (adopted by Fed. R. Bankr. P. 7008) requires only notice pleading. The Amended Petition incorporates all paragraphs of the petition, which includes claims of legal malpractice and breach of fiduciary duty. These actions do not relate to Blanchard.

[6] Blanchard concedes that any of plaintiffs' claims based on their payment to him on February 5, 2001 are not prescribed or perempted. His motion is directed to plaintiffs' claims arising from the disbursements made to him in October 1998 and February 1999.

4

renunciation. *Tubos De Acero De Mexico, S.A. v. American International Investment Corp., Inc.*, 292 F.3d 471, 481 fn.4 (5th Cir. 2002) (citations omitted). Resolving the tension between the Louisiana state appellate courts and the federal district courts in the Fifth Circuit, the court in *Tubos* held that the "continuing violation" doctrine applies to the peremptive period for LUTPA. *Id*. at 482. Thus, if a violation of LUTPA is continuing, the peremptive period does not begin to run until the violation ceases. *Id*. at 481.

The Keiths allege that Blanchard engaged in unfair and deceptive practices barred by the LUTPA in his financial dealings with them from at least 1997 until February 5, 2001, when they made the final payment to him. Blanchard does not dispute that he loaned money to the Keiths and had business dealings with them at least as early as 1997, although he denies that he violated LUTPA. If Blanchard did in fact commit continuing violations of the statute until the final payment was made on February 5, 2001, the peremptive period on all of the earlier alleged violations would not begin to run until that date.

The critical point in time for purposes of determining timeliness of an action under LUTPA is the first date on which the alleged violations began. There are disputed issues of material fact relating to the time when Blanchard's alleged violations of LUTPA began, which could have been as early as 1997, and relating to the terms of the loans that allegedly violate LUTPA. The Court finds that these issues of fact regarding the nature of Blanchard's violation of LUTPA and whether it was continuing, preclude summary judgment on the question of peremption under LUTPA.

**(B) Usury and Louisiana Consumer Credit Law**

Under La. Civ. Code art. 2924(c)(1), if a contract provides for interest, the interest rate must

5

be stated in writing and cannot exceed 12 percent per annum. Article 2924(c)(2) provides that actions to recover for usurious interest paid on any contract must be brought within two years from the time of payment. Accordingly, under article 2924 the Keiths can only recover allegedly usurious payments they made to Blanchard within two years before they filed suit. *See South Shreveport Finance & Loan Co. v. Stephenson*, 168 So. 100, 102 (La. 1936) (borrower could not recover payment of usurious interest where claim was made more than two years after payment was made).

Blanchard acknowledged that the October 1998 payment from the settlement funds paid him in full on the Keiths' outstanding debt at that time. Apart from the 1998 payment and the February 5, 2001 payment, the Keiths made only one other loan payment to Blanchard, in February 1999. The Keiths have not offered any facts relating to the payment dates to counter those provided by Blanchard. Instead, they urge the Court to extend the application of the continuing violation doctrine to the usury law based upon policy considerations. The Court declines their invitation to extend the doctrine in the absence of a legal basis for doing so. Blanchard is entitled to summary judgment on this claim of the Amended Petition because the Keiths' petition was filed well after the two year period on both the 1998 and 1999 payments, and thus their usury claims arising out of these payments are prescribed.

Certain loan contracts and credit sales fall within the provisions of the Louisiana Consumer Credit Law, La. R.S. 9:3510 *et seq.* Sections 3516, 3519 and 3520 of the Consumer Credit Law define *consumers*, *consumer loans* and *consumer credit sales,* and establish the maximum interest rate that may be charged on transactions within the scope of the law. Pursuant to La. R.S. 9:3552(E), any action under the Consumer Credit Law must be brought within 60 days of the final payment on the contract, or within one year of the date of the violation if the transaction is a revolving loan.

There are insufficient facts to determine whether the Keiths' transactions with Blanchard fall within the ambit of the Consumer Credit Law. For this reason, it is also impossible at this point to apply any of the time limitations to the Keiths' potential claims under the Consumer Credit Law or to grant summary judgment regarding any potential claims under that law.

### (C) Fraud and Illicit Contract

Delictual actions such as fraud must be brought within one year from the day the injury or damage is sustained. La. Civ. Code article 3492. The doctrine of *contra non valentem* can serve to prevent the commencement of the prescriptive period only until the time the plaintiff has actual or constructive knowledge of the tortious acts. In other words, prescription runs from the date on which the plaintiff had sufficient information to prompt further inquiry. *Eldredge v. Martin Marietta Corp.*, 207 So.3d 737, 743 (La. App. 5th Cir. 2000). When a claim is prescribed on its face, the plaintiff bears the burden of showing facts supporting the application of the doctrine of *contra non valentem. K & M Enterprises of Slaughter, Inc. v. Richland Equipment Co., Inc.*, 700 So.2d 921, 924 (La. App. 1st Cir. 1997).

Article 1953 of the Louisiana Civil Code defines *fraud* as "a misrepresentation or suppression of the truth made with intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other . . . may also result from silence or inaction." The basis of the fraud claim in the Amended Petition seems to be that Blanchard charged usurious interest rates because he knew he would be paid from the Keiths' settlements, and that he misrepresented the source of the loan money as coming from "unconventional" sources with unconventional collection methods in order to intimidate the Keiths.

The Keiths knew in 1997 that Blanchard obtained the money to loan them from someone else. They also knew in 1997, and in all their later transactions with Blanchard, that he was charging them interest on loans that would result in their repaying double the amount they borrowed. The Keiths also directed Landry to repay Blanchard from settlement proceeds as early as October 1998. Despite knowing all this, and that the 1999 loan was made under the same terms and conditions, the plaintiffs waited until 2001 to consult a lawyer to investigate their complaints against Blanchard. Because the Amended Petition discloses on its face that it was not filed within one year of the time the alleged injury to the Keiths commenced, plaintiffs have the burden of proving that the one year prescriptive period has been interrupted or suspended. They have not done so. Accordingly, their fraud claim is prescribed for the fraudulent acts that allegedly took place prior to February 5, 2001.

Finally, the Keiths urge that the transactions they entered into with Blanchard were illicit contracts and were therefore absolutely null under La. Civ. Code article 2030. Pursuant to La. Civ. Code article 2032, an action to annul an absolutely null contract never prescribes.

The plaintiffs appear to argue that if the loan contracts with Blanchard were usurious, they could also be illicit contracts and therefore their claims under those contracts cannot prescribe. However, Civil Code article 2924 addressing usury specifically addresses prescription for usury claims, and prevails over the period established by article 2030. Where two statutes dealing with the same subject conflict, "the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character." *LeBreton v. Rabito*, 714 So.2d 1226, 1229 (La. 1998). Accordingly, the conflict is resolved by the application of the more specific provisions of article 2924.

**Conclusion**

The Court finds material issues of fact and will deny summary judgment as to the plaintiffs' claims under LUTPA. The Court finds that there is no issue of fact as to the usury claims insofar as they concern payments made more than two years before the plaintiffs sued, and will grant Blanchard judgment as a matter of law on those claims. As to the usury claims on payments made within two years before the plaintiffs sued, summary judgment will be denied. Summary judgment as to the claims under the Consumer Credit Law also will be denied because there are insufficient facts to determine the applicability of the Consumer Credit Law to the facts of this dispute. The Court finds no genuine issue of fact regarding the prescription of the fraud claim in the Amended Petition, and will grant summary judgment on that claim. Finally, the Court concludes that Civil Code article 2030 does not apply in this case and will grant summary judgment in favor of Blanchard on the illicit contract claim.

Baton Rouge, Louisiana, May 13, 2003.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE